IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IFTIKHAR AHMED MEMON,

                Plaintiff,

    v.

WAUKESHA COUNTY TECHNICAL
COLLEGE,

                Defendant.

OPINION and ORDER

13-cv-704-jdp

---

      Plaintiff Iftikhar Ahmed Memon holds master's degrees in education and agricultural economics. He applied for a job as an economics instructor at defendant Waukesha County Technical College (WCTC) but was not offered an interview for that position. He contends that defendant violated Title VII of the Civil Rights Act and the Age Discrimination in Employment Act (ADEA) by discriminating against him based on his race and his age when it refused to interview him.

      Defendant has moved for summary judgment. Dkt. 61. I will grant that motion because plaintiff fails to present evidence that could lead a reasonable jury to conclude that he met defendant's stated qualifications for getting an interview or that defendant is lying when it explains that it made its decision based on its stated qualifications rather than racial or age-based preferences.

      Before discussing the summary judgment motion, I will address a discovery motion filed by plaintiff titled asking "that Federal Court of Law request to WCTC . . . not to tamper and suppress the document." Dkt. 75. Plaintiff states that defendant initially provided him

1

with an incomplete copy of the job application from competing applicant Shankar Ghimire—plaintiff received only the odd-numbered pages of the six-page application. Defendant explains that when it responded to plaintiff's discovery request for the applications from the 2013 economics instructor hiring cycle, it copied those applications without noticing that several of the original applications were double-sided, leading to only the front, odd-numbered sides being copied.

Plaintiff asks the court to instruct defendant "not to tamper [with] applications . . . and not to suppress any information." *Id*. at 2. It goes without saying that defendant is required to turn over accurate copies of discoverable material, but at this point, I will deny the motion as moot. Had plaintiff filed this motion immediately upon receiving the requests, the court might be in a position to instruct defendant to fix the mistake, but defendant has already done so by sending new, complete copies of those applications to plaintiff.

In his reply, plaintiff seems to be asking for the court to sanction defendant by granting judgment in his favor, but he falls far short of persuading me that defendant should be sanctioned at all, much less sanctioned in such an extreme fashion. Although plaintiff calls defendant's conduct "fraud," he does not raise a plausible theory for what defendant would stand to gain by intentionally making the particular, obvious errors it did, or how the errors actually harmed him. He asserts that his own motion for summary judgment, Dkt. 60, "would have been a little different" had he had the complete Ghimire application, but I have already denied that motion because it was generally unintelligible, and because plaintiff failed to follow this court's procedures for briefing summary judgment motions. Dkt. 73. Having the full version of Ghimire's application at that point would not have made a difference. Plaintiff also says that he does not trust the other applications submitted by defendant, but

2

he does not explain what he thinks is missing or tampered with in the "complete" versions of the applications, and defendant's earlier mistake does not raise a reasonable concern about the authenticity of the evidence it has submitted. Therefore, I will deny the motion. I will move on to consider defendant's motion for summary judgment.

UNDISPUTED FACTS

The following facts are drawn from the parties' proposed findings of fact and attached exhibits and are, unless otherwise noted, undisputed.

Plaintiff Iftikhar Memon resides in Black River Falls, Wisconsin. He is of Pakistani descent and was born in 1968. He holds master's degrees in education and agricultural economics. From 1994 to 1996, plaintiff worked as a lecturer at the Sindh Agriculture University Tandojam in Pakistan. At the time of the events in question in this lawsuit, plaintiff taught students in grades 4 through 12 at the Ho-Chunk Nation's Youth and Learning Center in Black River Falls.

Defendant Waukesha County Technical College is a post-secondary technical college that awards two-year associate degrees, one- and two-year technical diplomas, short-term certifications, and offers customized training to its students.

On March 5, 2013, defendant posted an open position with the title of "Instructor-Economics." This was at least the third time defendant advertised this position; there had been two hiring cycles in 2012, in which no one was hired. Plaintiff had also applied during both of defendant's 2012 hiring cycles but had not gotten the job.

The required minimum qualifications stated in the March 5, 2013 posting were:

- a master's Degree in Economics or in a related field with 18 graduate-level credits

- one year of recent post-secondary teaching experience

- one year of full-time occupational (non-teaching) experience

- eligibility for Wisconsin Technical College System's certification

- experience working as part of an "instructional team"

Defendant also listed the following "preferred" qualifications for the position:

- recent experience teaching at a community or technical college

- post-secondary experience teaching "alternative delivery formats" such as internet, accelerated, and "hybrid/blended" coursework (I understand "hybrid/blended" to mean coursework taught both online and in-person), and experience using "Blackboard" (which I understand to be software used to assist educational endeavors) or a similar platform

- teaching experience, work experience, or experience developing curriculum in the area of international or diversity studies

Applicants for the position were required to complete an electronic job application including several questions about the applicant's experience and credentials and to submit a cover letter, current resume, and transcripts. Applicants were not asked to provide their age or full date of birth. Applicants were given the chance to voluntarily self-identify their race and gender on the electronic application for reporting purposes. This information was kept confidential and was accessible only by designated human resources staff, not by the officials involved in screening the applicants or making the hiring decision.

Plaintiff was one of 34 applicants for the position. Laquitha Terry, an "employment specialist" at WCTC, reviewed the applications and selected the eight candidates who, in her view, met all of the required qualifications and at least two of the three preferred qualifications. Five of these candidates self-identified as white, two as Asian, and one as

African American. Terry forwarded those candidates to Associate Dean of Communications and Social Science Elvira Craig de Silva, who was responsible for determining which applicants would be offered an interview for the position.

In reviewing plaintiff's application, Terry concluded that plaintiff did not meet the minimum qualifications for the position because he did not have recent post-secondary teaching experience. Plaintiff's most recent experience teaching at a post-secondary institution was in 1996 at Sindh Agriculture University Tandojam. Terry also concluded that plaintiff did not meet two of the three preferred qualifications: he did not have experience teaching in a community college or technical college setting, nor did he have experience teaching "alternative delivery formats" such as online or "hybrid/blended" courses. (Plaintiff states that he has had "5000 level" coursework involving online teaching methods, but he does not dispute that he had no actual post-secondary teaching experience with these methods, and he stated as much on his job application.) Plaintiff did not receive an interview.

Plaintiff believes that four other applicants of Asian descent were not offered an interview even though they met the qualifications for the job. Those applicants were:

- Lloudmila Ismailova, who plaintiff claims is from Turkmenistan (her application shows that she attended the Turkmen Institute of National Economy).

- Muhammad Rahman, who plaintiff claims is from Bangladesh (his application shows that he attended the University of Dhaka, located in Bangladesh).

- Kai Chen, who plaintiff claims is from China (his application shows that he attended two universities in China).

- Manjula Guru, who plaintiff claims is an "Indian American" (her application shows that she attended the University of Delhi).

Defendant states that Terry rejected Ismailova because she lacked the requisite one year of recent post-secondary teaching experience; at the time of her application, she had only four months of recent post-secondary teaching experience (it appears that her previous experience was over 10 years prior). Terry rejected Rahman as ineligible for Wisconsin Technical College System's certification; although Rahman answered "yes" to the question whether he had a year of "occupational," non-teaching, experience, this was not evident from the information he provided in his application or resume. Terry rejected Chen because he failed to meet the requirement of experience working as part of an instructional team; Chen's answer to that application question stated, "I have advises [sic] about 20 students since I came to Mount Olive College. I give them suggestions about enrollment, internship, Job-hunting, as well as career-choice." Terry rejected Guru because she failed to attach a cover letter or resume to her application, as instructed in the job posting.

Craig de Silva independently reviewed the application materials of the eight candidates forwarded to her by Terry. Craig de Silva did not offer an interview to one of the candidates (who self-identified as white) because his post-secondary teaching experience was less recent and he was not experienced in the area of international or diversity studies. The other seven candidates were offered interviews.

Plaintiff believes that one of the candidates approved by Terry and Craig de Silva, Shankar Ghimire, did not meet the standard for approval articulated by Terry. Ghimire self-identified as Asian and listed Nepali as his native language. Ghimire held a master's degree in applied economics and had recent experience teaching economics at the university level, occupational experience, and eligibility for Wisconsin Technical College System certification. He did not have experience teaching at a community or technical college. The parties dispute

whether Ghimire met the requirement of having experience working as part of an "instructional team." Plaintiff seems to be saying that Ghimire's response indicating that he frequently sought input from the graduate director and department chair is insufficient to show that he worked as part of an instructional team.

The parties also dispute whether Ghimire had experience with "alternative delivery formats." Plaintiff seems to be saying that Ghimire's stated experience in using online resources in his classes is insufficient to qualify as a "hybrid" course. Plaintiff argues that "Typically, [a] hybrid course will meet 50 percent of the time in the classroom and 50 percent online but [Ghimire's] answer does not talk about it." Dkt. 77, at 4.

Four of the candidates, including Ghimire, withdrew from consideration. The three remaining candidates were interviewed by a panel of three WCTC instructors. Defendant offered the job to Nkuma Uche, who accepted the offer. Uche, who self-identified as African American, was 56 years old at the time he accepted the job offer.

With regard to defendant's two 2012 efforts to hire an economics instructor, defendant posted a similar, but not identical, job listing for the position. The 2012 listings required a year of post-secondary teaching experience, but the experience did not have to be recent, as in the 2013 application. The 2012 listings did not require experience working as part of an instructional team and did not have the preferred qualification of recent teaching experience at a community or technical college. There were 41 applicants for the June 2012 cycle and 21 applicants for the September 2012 cycle.

Defendant did not hire any of the applicants during those two cycles, stating that none of the applicants met the qualifications in the listings. Plaintiff applied during both 2012 cycles, but he was rejected both times. Defendant states that this is because plainitff

did not meet the "alternative delivery formats" or "international or diversity studies" preferred qualifications.

Plaintiff provides the application materials for the following other rejected applicants from the 2012 cycles in an effort to show defendant's discriminatory animus:

- An applicant plaintiff claims is from Pakistan (this applicant's submission shows that he received two degrees from universities in Pakistan).

- An applicant who served in the United States armed forces in Vietnam.

- An applicant plaintiff claims is from China (this applicant's submission shows that he or she received a degree from a university in China).

- An applicant plaintiff claims is from Libya (this applicant's submission shows that he or she received a degree from a university in Libya).

- An applicant plaintiff claims is from India (this applicant's submission shows that he or she received two degrees from a university in India).

- An applicant who served in the United States armed forces in Hawaii.

Defendant states that the Pakistani applicant was rejected because his application "contained too many errors," Dkt. 87, at 16. Defendant states that the other five applicants were rejected for failing to meet the "alternative delivery formats" and "international or diversity studies" preferred qualifications, and that the veteran who had served in Hawaii did not have a master's degree in economics.

As part of an email correspondence with the human resources manager at WCTC, plaintiff received an email detailing the racial breakdown of the WCTC instructors. On September 30, 2013, only 1 of the 225 instructors who held jobs that were at least 50 percent of a full-time position was Asian. Dkt. 1-8. This document also shows that only 8 of the 705 part-time instructors (holding a job under 50 percent of a full-time position) were Asian. *Id*.

8

ANALYSIS

**A.      Standard of review**

Summary judgment is appropriate if the moving party, here defendant WCTC, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Id.* He may not simply rely on the allegations in his pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [his] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996) (citations omitted).

**B.      Race discrimination**

Plaintiff brings a discrimination claim under Title VII, which makes it unlawful for an employer to fail or refuse to hire an individual because of the individual's race. 42 U.S.C. § 2000e-2(a)(1). I understand plaintiff's claims to focus on Terry's and Craig de Silva's decisions selecting candidates to interview for the position, even though they did not make the ultimate decision on whom to hire.[1] *See Shipley v. Dugan*, 874 F. Supp. 933, 937 (S.D.

---

[1] In his proposed findings, plaintiff mentions a discussion he had with a WCTC vice president about his application, but it is undisputed that the vice president was not involved in any part of the hiring process. Plaintiff seems to take issue with that non-involvement, stating in his proposed findings that the vice president "could have called all responsible people who were rejecting me" or "call[ed] emergency meeting and defuse[d] the most serious situation," but he does not develop this theory of liability in his facts or in his briefing, so I need not consider it further.

Ind. 1995) (""Title VII . . . [is] offended by discrimination at any point in the selection process.").

A plaintiff can prove discrimination under Title VII by using either the "direct" or the "indirect" method of proof. *Darchak v. Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009). In any employment discrimination case, the central question is "whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else had remained the same." *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540 (7th Cir. 2005) (quotation marks and citation omitted). Plaintiff does not explain whether he is attempting to proceed under either the direct or indirect methods, so I will consider both, addressing the indirect method first.

### 1.    Indirect method

Under the indirect method of proving discrimination, plaintiff must establish a *prima facie* case consisting of four elements: (1) he was a member of a protected class; (2) he applied for an open position for which he was qualified; (3) he did not receive the position; and (4) those who were hired were not in the protected class and had similar or lesser qualifications. *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 444 (7th Cir. 2014); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Satisfying all four prongs of the *prima facie* case shifts the burden to the defendant "to produce a legitimate, noninvidious reason for its actions." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). If the defendant rebuts the *prima facie* case, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual. *Id*.

Plaintiff meets the first and third elements for a *prima facie* case because it is undisputed that he is the member of a protected class and that he was not hired for the

economic instructor position. However, he does not appear to meet the second element because he did not meet the listed qualifications for the position. Defendant included a requirement that candidates had at least "one recent year of post-secondary teaching experience." Plaintiff's application showed that he did not have recent post-secondary teaching experience. Instead, it showed that he had last taught at a post-secondary institution in 1996—17 years prior to the job application in this case—which no reasonable juror could consider to be "recent" experience. Additionally, plaintiff did not meet the "preferred" qualifications of (1) experience teaching in a community or technical college; and (2) post-secondary experience teaching "alternative delivery formats" such as internet or "hybrid" courses.

The only place plaintiff explicitly addresses the second element of the *prima facie* case is in his responses to defendant's proposed findings of fact, in which he states that defendant "ignored" his non-recent post-secondary experience and his more recent experience teaching at the Ho-Chunk Nation's Youth and Learning Center in Black River Falls, Wisconsin. I understand plaintiff to be arguing that he should be considered qualified for the position regardless of the listed requirements. But defendant is free to set its qualifications for the job. "What the qualifications for a position are . . . is a business decision, one courts should not interfere with. We do not tell employers what the requirements for a job must be." *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001) (internal citation omitted). It is undisputed that plaintiff's post-secondary experience was not recent, and his recent work with the Ho-Chunk Nation was not at a post-secondary institution. Nor, for that matter, does plaintiff dispute that he failed to meet two of the three "preferred" qualifications in the job listing.

Plaintiff's response brief is somewhat difficult to decipher and does not directly address the qualification prong of his *prima facie* case. The major thrust of plaintiff's brief is that he and four other Asian applicants met the requirements for the job but were not interviewed, and that he was at least as qualified as Shankar Ghimire, one of the seven applicants who was offered an interview. Construing plaintiff's arguments generously, I understand plaintiff to be arguing that that defendant did not actually make its hiring decision based on the listed qualifications, but rather on racial preferences against Asians. Although this is a type of argument generally used to show pretext on the part of a Title VII defendant, I also understand it to be an argument that plaintiff was in fact qualified for the job and that defendant's actual choices in screening the job applications could only be attributed to racial preferences in the screening process. Because the issues of qualification and pretext are intertwined, I will consider them together. *See, e.g.*, *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) ("[T]he second prong and the pretext question seemingly merge because the issue is the same—whether the employer is lying.").

Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). "In order 'to show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (quoting Fischer v. Avanade, Inc., 519 F.3d 393, 403 (7th Cir. 2008)). "If the plaintiff uses indirect evidence to meet his burden, he must show that the employer's reason is not credible or factually baseless." *Id*. The plaintiff must also provide evidence supporting the inference that the employer's real reason for the decision was discriminatory. *Id*. at 901-02. Even if the defendant's decision was unreasonable, pretext is not established where the

decisionmaker honestly believed the nondiscriminatory reason. *Id*. at 902. "This is because courts are not 'superpersonnel department[s]' charged with determining best business practices." *Id*. (quoting *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)). The decision to favor one job applicant over another can be "mistaken, ill-considered or foolish, [but] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

Although in certain circumstances a Title VII plaintiff might be able to show that a defendant's handling of job applications from people of different races shows its qualification-based rationale to be a lie, in this case plaintiff falls far short of adducing evidence that could lead a reasonable factfinder to conclude that defendant made its decisions based on discriminatory animus rather than the listed qualifications. First, I understand plaintiff to be arguing that in addition to himself, four other Asian applicants met the requirements for the job but were not interviewed.

Defendant objects to plaintiff's proposed findings of fact regarding the race or national origin of these four other applicants, arguing that "[plaintiff's] speculative allegations regarding the national origin and/or race of the applicants referenced in his response are not supported by credible evidence." Dkt. 86, at 17. I conclude that plaintiff has provided enough evidence to raise a reasonable inference of the candidates' races or origins. Moreover, although it is undisputed that the employees involved in the hiring process did not have access to each applicant's self-reported race, a reasonable inference could be made that an employer could surmise an applicant's race or national origin from biographical data on the application.

13

But in any event, these other candidates' applications do not show that defendant used discriminatory animus, rather than the listed qualifications, to screen out Asian applicants. Rather, they support defendant's stated rationale, because each of the four applicants failed to meet the threshold for further consideration outlined by Terry. Ismailova did not meet the required qualification of one year of recent post-secondary teaching experience, because at the time of her application, she had only four months of recent post-secondary teaching experience. Rahman did not meet the required qualification of eligibility for Wisconsin Technical College System's certification because although he answered "yes" to the question whether he had a year of "occupational," non-teaching experience, this was not evident from the information he provided in his application or resume. Chen did not meet the requirement of experience working as part of an instructional team, because his answer to that application question explained only that he had advised students about school- and career-related questions. Guru's application was rejected because she failed to attach a cover letter or resume to her application, as instructed in the job posting.

As for the applicants who were offered interviews, plaintiff does not dispute that six of the seven candidates, including one Asian candidate, indeed met the qualifications set by defendant.[2] The only candidate offered an interview who plaintiff argues did not meet this standard was Shankar Ghimire. The parties disagree about whether Ghimire actually met various qualifications, such as experience working as part of an instructional team and experience with "alternative delivery formats," but the important issue is not whether defendant accurately appraised Ghimire's application, but rather whether defendant meant to

---

[2] Nor does plaintiff dispute that the one candidate forwarded by Terry but rejected by Craig de Silva, met the criteria set by Terry.

discriminate. *See, e.g., Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) ("Even an employer's erroneous decisionmaking, exhibiting poor business judgment, is not sufficient to establish pretext."). Even if plaintiff were correct about each of Ghimire's qualifications, it is not clear why he thinks this would show racial animus toward plaintiff. As defendant points out, both plaintiff and Ghimire are Asian, so the choice of Ghimire over plaintiff for an interview does not raise any reasonable possibility that defendant meant to discriminate against Asians.[3]

I understand plaintiff to be saying that his pretext argument is supported by his and other candidates' rejected applications for the economics instructor position for two previous hiring cycles, in June and September 2012.[4] Defendant initially argues that any evidence about the 2012 cycles is irrelevant because plaintiff's claims about those cycles were dismissed in an April 2014 order in this case after plaintiff admitted that he had not exhausted his administrative remedies on those claims. *See* Dkt. 21. As I stated in granting plaintiff's motion to compel discovery regarding the 2012 cycles, information about the 2012 cycles is not necessarily irrelevant. *See* Dkt. 73. All three of the application cycles were for the same job, thus making evidence regarding the previous cycles possibly relevant in discussing the March 2013 cycle. In addition, a plaintiff bringing an individual discrimination claim may still bring "pattern and practice" evidence, although such evidence "'can only be

---

[3] This also shows that plaintiff is unable to meet the fourth element of his *prima facie* case, because he does not take issue with the qualifications of seven of the eight applicants approved by Terry, and the one whose qualifications he criticizes is of the same protected class as plaintiff.

[4] Plaintiff also references a 2008 job application in a different department, but provides no evidence about this position, so I will not consider the 2008 application.

collateral to evidence of specific discrimination against the actual plaintiff.'" *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990) (quoting *Williams v. Boorstin*, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980).

The part of the 2012 data most beneficial to plaintiff is that his qualifications are a better fit (albeit not a perfect fit) for the qualifications listed for the 2012 cycles. Because those job listings did not require *recent* post-secondary teaching experience, it is undisputed that plaintiff met all of the required qualifications. Nor did the 2012 listings include the preferred qualification of experience at a community or technical college. However, it is undisputed that plaintiff did not meet the preferred qualification about "alternative delivery formats."[5][6]

The problem for plaintiff is that although he might have a stronger *prima facie* case for an indirect-method claim with regard to the 2012 cycles, the evidence he provides does not

---

[5] In his proposed findings, plaintiff states, "Yes, I am experienced to teach with the help of blackboard and SMART Board" but he conceded that "I am not experienced yet to teach through (internet, accelerated, hybrid/blended)." Dkt. 76, at 26, 28.

[6] The other preferred qualification for the 2012 cycles was the same "experience with international or diversity studies" qualification that was present in the 2013 listing. Plaintiff appears to have met this qualification in 2013 by listing his experience teaching in Pakistan and with the Ho-Chunk Nation. Defendant argues that plaintiff did not meet that qualification in the 2012 listings, citing to the individual pages of plaintiff's applications that appear to include a blank response in the space following each application's question about this issue. However, there is reason to believe that the printouts defendant produced regarding these earlier application cycles incorrectly include that question (and thus the corresponding blank responses). The "supplemental questionnaire" included with both of the 2012 job postings does not include that question, and Terry states in a declaration that "five additional questions" were added to the 2013 application. It appears that the question about international studies was one of the added questions. It is unclear why the printouts, which I understand to have been produced in February 2015, *see, e.g.*, Dkt. 76-4, at 42, might contain questions that were not included in the original version of the questionnaire, but I will grant plaintiff the inference that they were indeed not there in 2012. I will also grant him the inference that he met the "international or diversity studies" qualification by virtue of mentioning his Ho-Chunk Nation job in both 2012 applications.

16

prove that he was discriminated against in 2012, much less that he was discriminated against in 2013. He would still need to show that defendant rejected him because of his race and not because of Terry's stated reason that none of the 2012 applicants had the "desired skill set." Dkt. 55, at 3. The evidence that plaintiff presents to show pretext in the 2012 decisions is woefully scant, so he fails to make this showing.

As stated above, plaintiff did not meet at least one of the preferred qualifications. Although there were about 60 other applications between the two 2012 cycles, plaintiff provides information about only six other applicants. Two of them are applicants who are veterans of the armed forces. Plaintiff argues that this shows that defendant discriminated against veterans, but this issue has no relevance to his claims.

The other four applicants were from persons plaintiff believes to be from Pakistan, China, Libya, and India, respectively.[7] Defendant states that the three applicants (all but the Pakistani applicant) were rejected because they did not meet the preferred qualifications regarding "alternative delivery formats" or "international or diversity studies." A review of each of the applications shows that this conclusion is sound at least with respect to the alternative delivery format qualification, as none of the three applications indicates the applicant's experience with internet classes or Blackboard software.[8] The "international or

---

[7] As with the 2013 applications, I will draw the inferences that the applicants were of Asian descent and that the relevant WCTC employees knew that based on the information in their applications. Even granting plaintiff that inference, the Libyan applicant would not be of Asian descent. Construing plaintiff's arguments generously, I will infer that this applicant's rejection could serve to show that defendant was biased against foreigners or people perceived to be non-white in general.

[8] As discussed above, *see* supra n.6, I infer that the explicit "supplemental questions" about the preferred qualifications were not present in the 2012 application materials. The 2012 job listings (as well as the 2013 listing) ask the applicant for "a cover letter addressing the

diversity studies" question is difficult to gauge because neither party defines precisely what this means, but it is plaintiff's burden to show that defendant's rationale is pretextual, and he fails to show how this qualification was met by these applicants. As for the Pakistani applicant, defendant says that he was rejected because his application "contained too many errors," Dkt. 87, at 16, although defendant does not elaborate on the precise nature of these errors, and it is not immediately apparent from the face of the application what those errors are.

At best, plaintiff provides the court with a few applications of people believed to be of Asian descent who did not meet all of the "preferred" qualifications for the job, and a Pakistani applicant whose application was rejected for reasons that are unclear. But he does not explain how these applications and their treatment by defendant stacked up against the treatment of applicants of other races or from other locations. Were there applicants of another race or national origin whose applications had similar flaws to plaintiff's but were treated better? Plaintiff does not say. Ultimately, plaintiff presents an incomplete picture of the 2012 process that provides a very weak case for discrimination in those two hiring cycles, which in turn carries little weight toward the question of discrimination in the 2013 process, considering the evidence discussed above showing that defendant indeed applied its stated

---

position and qualifications stated above," Dkt. 55-1, 55-2, but these cover letters were not submitted as evidence in this case. Plaintiff does not suggest that the cover letters would have provided evidence showing that the applicants demonstrated that they met all of the stated qualifications. Nor does plaintiff argue that inferences should be drawn against defendant for failing to produce the letters.

rationale to assess the 2013 candidates. Accordingly, the 2012 evidence is insufficient to create a dispute of material fact on plaintiff's claim under the indirect method.

The final piece of evidence on which plaintiff focuses is an email sent to him by the human resources manager at WCTC showing that as of September 30, 2013, only one of the 225 instructors holding jobs that were at least 50 percent of a full-time position was Asian.[9] Dkt. 1-8. This document also shows that only 8 of the 705 part-time instructors (holding a job under 50 percent of a full-time position) were Asian. *Id*. I understand plaintiff to be asserting that these statistics reveal a longstanding pattern of discrimination against Asians.

I conclude that this statistical evidence adds very little to plaintiff's case. Usually, "[w]ithin the *McDonnell Douglas* individual disparate treatment model . . . statistical evidence is only one small part of a substantial web of evidence indicating pretext." *Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000). In this case, plaintiff's statistical evidence holds even less weight because he does not provide the relevant "labor market" or "community" to which these hiring numbers might be compared. *Id*. ("A valid statistical analysis must encompass the relevant labor market."); *see also Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308-09 (1977). That is, plaintiff presents the raw data regarding defendant's instructor population but does not compare it to the population of the applicants for the jobs in question, persons nominally eligible for such jobs, or even the population at large. *See Hazelwood*, 433 U.S. at 308 & n.13 (Court considered "qualified public school teacher population" to be "relevant labor market" but suggested that date regarding applicants for

---

[9] Plaintiff argues further that this position was held by a woman, meaning that defendant employed zero Asian male instructors holding at least 50 percent of a full-time position. However, gender statistics are irrelevant because plaintiff is not proceeding on a sex discrimination claim.

teaching positions would also be "very relevant."). Thus, although from a superficial perspective the data seems to show that defendant has hired Asian instructors at a very low rate, it is difficult to draw any inferences from the data without more context. Given the rest of the evidence in the record, particularly the much more direct evidence concerning the 2013 hiring process, I conclude that no reasonable jury could find that defendant's stated rationale regarding its 2013 hiring decision was a pretext, and thus plaintiff's attempt under the indirect method fails.

## 2.    Direct method

Under the direct method, a plaintiff must produce either direct or circumstantial evidence that would permit a jury to infer that discrimination motivated an adverse employment action. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008). Direct evidence is something close to an explicit admission by the employer that a particular decision was motivated by discrimination; this type of evidence is rare, but it "uniquely reveals" the employer's intent to discriminate. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Plaintiff does not present any evidence of this nature.

More common is proof by circumstantial evidence, "which suggests discrimination albeit through a longer chain of inferences." *Hasan*, 552 F.3d at 527 (internal citation omitted). A plaintiff can support his claim by "constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Koszola v. Bd. of Educ. of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Evidence that proves a claim under the direct method typically includes:

(1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citation omitted). A plaintiff need not produce evidence in each category to survive summary judgment. *See Darchak*, 580 F.3d at 631.

The circumstantial evidence plaintiff has submitted falls into the latter two categories. But that evidence—defendant's treatment of his and other candidates' 2012 and 2013 applications and the statistics concerning the racial makeup of the WCTC instructors—does not amount to a mosaic of discrimination for the same reasons that the evidence does not enable plaintiff to make out a *prima facie* case of discrimination or to show pretext in the hiring process. Contrary to plaintiff's assertions, the evidence he submits regarding individual applicants does not show that Asians were treated systematically worse than similarly situated applicants of other races. At most, plaintiff raises reasonable questions about applicant Ghimire's qualifications, but, as Ghimire is also Asian, he does not show that applicants outside his protected class unfairly received interview offers. Moreover, his statistical evidence is so devoid of context as to provide virtually no value. In short, nothing plaintiff presents comes close to pointing *directly* to a discriminatory reason for the hiring decision, as required under the direct method. Because plaintiff is unable to raise genuine issues of material fact under either the direct or indirect methods, I will grant defendant's motion for summary judgment on plaintiff's race discrimination claim.

**C.     Age discrimination**

The ADEA prohibits employers refusing to hire workers who are 40 or older on the basis of their age. 29 U.S.C. §§ 623(a)(1), 631(a). As with Title VII claims, a plaintiff suing under the ADEA may show discrimination directly or indirectly. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). Plaintiff's ADEA claim can be disposed of quickly because plaintiff does not present any evidence to support his claim other than that he is over 40 and he did not get the job. Unlike his Title VII claims, plaintiff does not raise any argument, present statistical evidence, or delve into other candidates' applications to determine whether defendant treated younger or older applicants differently. Moreover, it is undisputed that the candidate who was hired, Nkuma Uche, was 56 years old at the time he was hired, 12 years older than plaintiff. Because plaintiff has failed to present any evidence creating a dispute of material fact on his ADEA claim, I will grant defendant's motion for summary judgment on that claim.

ORDER

IT IS ORDERED that:

1.     Plaintiff Iftikhar Ahmed Memon's motion "not to tamper and suppress the document," Dkt. 75, is DENIED.

2.     Defendant Waukesha County Technical College's motion for summary judgment, Dkt. 61, is GRANTED.

3.      The clerk of court is directed to enter judgment in favor of defendant and close
        this case.

Entered June 11, 2015.

                                BY THE COURT:

                                /s/

                                JAMES D. PETERSON
                                District Judge

23